NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2562-13T2

STATE OF NEW JERSEY,

       Plaintiff-Respondent,

  v.

J.M., JR.,

       Defendant-Appellant.

_____

> **APPROVED FOR PUBLICATION**
>
> **November 21, 2014**
>
> **APPELLATE DIVISION**

Argued September 9, 2014 – Decided November 21, 2014

Before Judges Fisher, Nugent and Accurso.

On interlocutory appeal from Superior Court of New Jersey, Law Division, Gloucester County, Indictment No. 13-01-0072.

Jennifer L. Gottschalk argued the cause for appellant (Law Offices of Richard Sparaco, attorneys; Mr. Sparaco, on the brief).

Audrey M. Curwin, Senior Assistant Prosecutor, argued the cause for respondent (Sean F. Dalton, Gloucester County Prosecutor, attorney; Ms. Curwin, of counsel and on the brief).

The opinion of the court was delivered by

FISHER, P.J.A.D.

We granted leave to appeal — and now reverse — an order which authorized the State's use at trial of "other-crimes" evidence regarding similar accusations made against defendant in

Florida six years earlier. What makes this different from most other applications of N.J.R.E. 404(b) is that a jury acquitted defendant of this alleged "other crime." We conclude that the acquittal bars admission of this evidence and reverse.

I

Defendant is charged with one count of second-degree sexual assault, N.J.S.A. 2C:14-2(c)(1), and one count of fourth-degree criminal sexual contact, N.J.S.A. 2C:14-3(b). The State alleges that defendant, a massage therapist, digitally penetrated a female customer, E.S., at a Washington Township spa on July 5, 2012. In pretrial proceedings, the State made known its desire to present evidence that defendant sexually molested A.W. while providing her with a massage at a place of business in Florida on August 26, 2006. The trial judge conducted a hearing during which A.W. testified. After applying the Cofield factors,[1] the judge rendered an oral decision, during which he concluded that A.W.'s testimony would be admissible as proof of defendant's "motive, intent, plan and absence of mistake" in the commission of the charged offenses.

We granted leave to appeal and reverse not only because, as discussed in Section II, a proper Cofield analysis compels that

---

[1] State v. Cofield, 127 N.J. 328, 338 (1992).

result but also because, as discussed in Section III, acquittal-evidence should never be admitted in a later prosecution when offered to show that the prior offense actually occurred.

## II

Cofield requires that the proponent of other crimes evidence[2] demonstrate:

> 1. The evidence of the other crime must be admissible as relevant to a material issue;
>
> 2. It must be similar in kind and reasonably close in time to the offense charged;
>
> 3. The evidence of the other crime must be clear and convincing; and
>
> 4. The probative value of the evidence must not be outweighed by its apparent prejudice.
>
> [Ibid.; see also State v. Carlucci, 217 N.J. 129, 141 (2014).]

All four of these factors must support the admission of the evidence in question. State v. P.S., 202 N.J. 232, 255 (2010).[3]

In seeking reversal, defendant chiefly argues the first and fourth factors militate against admission of A.W.'s testimony.

---

[2]N.J.R.E. 404(b) refers not just to "other crimes" but also other "wrongs or acts," thereby opening the door to evidence of conduct that does not constitute a crime. See State v. Goodman, 415 N.J. Super. 210, 227-28 (App. Div. 2010), certif. denied, 205 N.J. 78 (2011).

[3]We are mindful the impact of the second factor has been minimalized in more recent decisions of our Supreme Court that are discussed later.

We conclude that, in fact, none of the four factors supports use of the testimony in question.[4]

## A. Relevance

As to the first factor, we agree with defendant that A.W.'s testimony about what allegedly occurred to her six years earlier is not probative of defendant's alleged (1) "motive," or (2) "intent," suggestive of (3) a "plan" to commit the offense for which he has here been charged, or admissible to demonstrate (4) "absence of a mistake."  Although the trial judge permitted use of the evidence by invoking all these purposes, the State has failed to demonstrate or persuade how any apply here.

### 1. Motive

Motive evidence is that which suggests the accused committed a specific offense.  See, e.g., State v. Mazowski, 337 N.J. Super. 275, 283 (App. Div. 2001); M.C. Slough & J.W. Knightly, Other Vices, Other Crimes, 41 Iowa L. Rev. 325, 328 (1956) (stating that "motive supplies the reason that nudges the

---

[4]Although the parties did not demand oral argument, we scheduled the matter for oral argument and requested supplemental briefs addressing the impact of double jeopardy principles, as well as Dowling v. United States, 493 U.S. 342, 110 S. Ct. 668, 107 L. Ed. 2d 708 (1990), and our earlier decision in State v. Schlue, 129 N.J. Super. 351 (App. Div.), certif. denied, 66 N.J. 316 (1974), which had not been cited in the parties' earlier submissions.

will and prods the mind to indulge the criminal intent"). By way of example, in State v. Marrero, 148 N.J. 469, 489 (1997), the Court held that the defendant's knowledge that the victim might file new charges against him evinced a motive for the victim's murder. See also State v. Williams, 190 N.J. 114, 129-30 (2007) (affirming admission of consciousness-of-guilt evidence, including "lying to police, inducing others to lie, and tampering with evidence"); State v. Baker, 400 N.J. Super. 28, 45-46 (App. Div. 2008), aff'd o.b., 198 N.J. 189 (2009) (holding that the defendant's failed bank robbery was relevant to show a motive for the charged store robbery the following day).

A motive theory, however, will not be permitted "when the 'motive' is so common that the reasoning that establishes relevance verges on ordinary propensity reasoning or when 'motive' is . . . just another word for propensity." 1 McCormick on Evidence § 190 (Broun ed., 7th ed., 2013). For example, proof of a defendant's drug addiction to show motive for committing a burglary or theft is inadmissible on the theory that drug addicts are perpetually in need of money. Mazowski, supra, 337 N.J. Super. at 282 (finding such a motive "indistinguishable from a claim that defendant has a

'disposition,' or general propensity to commit crimes, which is precisely what N.J.R.E. 404(b) prohibits").

Here, the prosecution's theory is that evidence of an alleged sexual assault six years earlier demonstrates a motive for committing the offense in question. This proffer does not logically suggest a motive, only an alleged propensity, which N.J.R.E. 404(b) emphatically prohibits.[5]

## 2. Intent

When offered as a means of proving intent, other-crimes evidence is often indistinguishable from motive. It is admissible in this context only when disclosing a mental intention or purpose in committing a particular offense. See State v. Mulero, 51 N.J. 224, 228 (1968). Accordingly, other-crimes evidence may be probative "to evidence the intent with which [the defendant] did the act or to negative the existence of an innocent intent." Ibid. Examples recognized in our case law reveal the extent of its application. In Mulero, evidence of prior assaults upon the victim was found admissible to show an intent to later inflict serious bodily injury to kill the

---

[5] N.J.R.E. 404(b) is often referred to as a rule of exclusion, not inclusion. See P.S., supra, 202 N.J. at 255. It has long been recognized that other-crimes evidence cannot be used to show an accused's propensity for committing offenses of the type charged. See State v. Nance, 148 N.J. 376, 386 (1997); State v. Gibbons, 105 N.J. 67, 77 (1987).

victim in the charged matter.  Ibid.  In an arson prosecution, we held that the defendant's prior threats to his landlord if he raised the rent were admissible to show an intent to burn down the landlord's building.  State v. Schubert, 235 N.J. Super. 212, 224 (App. Div. 1989), certif. denied, 121 N.J. 597 (1990); see also State v. Davidson, 225 N.J. Super. 1, 10-13 (App. Div.), certif. denied, 111 N.J. 594 (1988).

These examples reveal that proof of intent in this context requires a closer nexus between the prior crime and the charged offense than may be fairly or logically asserted here.  In each of these examples, the victim was the same person.  That, of course, is not the case here.  And, although other-crimes evidence to show intent need not always relate to the same victim, there must nevertheless be some other logical relationship.  See State v. Covell, 157 N.J. 554, 566-67 (1999) (admitting the defendant's earlier statement that he was only interested in young girls to show his intent to later lure a child-victim into a car); Marrero, supra, 148 N.J. at 485 (admitting evidence of a sexual assault to rebut evidence that sexual relations were consensual in a later aggravated sexual assault and murder prosecution).

The State has not shown a sufficient nexus between the alleged Florida offense and the matter at hand.  The alleged

victims are different and no logical relationship (other than the suggestion of a propensity) has been revealed.  As said in a similar context in State v. Stevens, 115 N.J. 289, 307 (1989), the invocation of "intent" as a ground for the admission of this type of evidence requires "an enhanced degree of precision" not present here.

### 3. Plan

With regard to "plan" — the third ground asserted by the State and endorsed by the trial judge — the proponent must demonstrate the evidence "proves the existence of an integrated plan, of which the other crimes and the indicted offenses are components."  Id. at 305-06; see also State v. Louf, 64 N.J. 172, 178 (1973) (holding that other-crimes evidence must "establish the existence of a larger continuing plan of which the crime on trial is a part"); 1 McCormick on Evidence, supra, § 190 (recognizing that other-crimes evidence is admissible only if "each crime [is] an integral part of an over-arching plan explicitly conceived and executed by the defendant or his confederates").  The evidence offered here of an alleged offense committed against a different person a thousand miles away six years earlier eliminates "plan" as a logical basis for admission of this evidence.  As our Supreme Court has emphasized, "the 'plan' example contemplates more than a strong factual

similarity between the 'other crimes' and the indicted offense." Stevens, supra, 115 N.J. at 305.[6]

Moreover, even if it could be said, as have some courts of other states, that "plan" possesses a broader scope in sexual abuse and domestic violence matters, 1 McCormick on Evidence, supra, § 190, the lack of "sufficient common features" negates the argument that the prior event and the charged offense "are manifestations of a common design or plan." People v. Ewoldt, 867 P.2d 757, 771 (Cal. 1994); see also State v. DeJesus, 953 A.2d 45, 75-76 (Conn. 2008). The State argues similarities in that in both matters defendant was engaged as a masseuse and his alleged victims were female customers. No other similarity, however, has been suggested; the State has not argued the alleged victims have similar appearances, that defendant's conduct was so similar as to constitute signature offenses,[7] or that there was a peculiarity about the two alleged offenses that would provide a sufficient link and negate the potential that a

---

[6]Stevens involved a prosecution of a police officer for official misconduct. At trial, testimony was admitted regarding three prior instances in which defendant used his official position to force women to submit to strip searches and sexual acts. Id. at 295-98.

[7]The State provided no evidence that defendant engaged in similar peculiar conduct — such as, for example, playing the same music, donning a particular article of clothing, or making in both instances a specific statement — immediately before the sexual contact in both matters.

jury would view the prior alleged offense as revealing defendant's propensity to commit such an offense.

### 4. The Absence of Mistake

The State argues that the evidence is admissible to prove absence of a mistake in the conduct charged here. Defendant, however, has asserted he will not assert mistake at trial, negating absence of a mistake as a basis for admitting A.W.'s testimony. See State v. Darby, 174 N.J. 509, 518 (2002) (holding that other-crimes evidence must be relevant to prove a fact genuinely in dispute).

To summarize our view of this first Cofield factor, the allegation that defendant was motivated, intended or planned to molest E.S. because he allegedly did something similar six years earlier is simply another way of asserting propensity to engage in such conduct — the very contention N.J.R.E. 404(b) strictly prohibits. Carlucci, supra, 217 N.J. at 143; State v. Reddish, 181 N.J. 553, 608 (2004); State v. Koskovich, 168 N.J. 448, 482 (2001).

### B. Similarity and Temporality

The second Cofield factor requires that other-crimes evidence be "similar in kind and reasonably close in time to the offense charged." 127 N.J. at 338. To be sure there are

similarities. As we have mentioned, in both instances defendant was working as a masseuse and the alleged victims were female customers. But the similarities there end.

In comparing the two events, the State offered the statement E.S. provided to police. She asserted that, during the massage, defendant's hands kept "getting closer and closer" to her vagina until defendant inserted a finger, causing her to jump up. She observed defendant had exposed himself, and he then requested she perform oral sex on him, causing her to leave. On the other hand, A.W. testified to markedly different circumstances during the N.J.R.E. 104 hearing. She testified that defendant had completed the massage and asked whether A.W. "want[ed] anything more." She responded "sure . . . [i]f there's time left," and, according to A.W., defendant then massaged her legs until she "had the sensation" of "a brush of his fingertip up against [her] pubic area." She asserted that defendant "massaged [her] clitoris area and then he inserted his middle finger into my vagina." After "15, 30 seconds" she told him he "need[ed] to stop before something happens," and he immediately complied.

If we assume the truth of both E.S.'s statement and A.W.'s testimony, nothing suggests such a similarity as to represent signature crimes or a distinctive modus operandi. E.S. has

asserted that, without warning, defendant digitally penetrated her while he exposed himself; on the other hand, A.W. testified that defendant asked whether she wanted to continue the massage, touched her without objection for fifteen to thirty seconds, and stopped upon her request.

Cofield also held that courts should consider whether the two events were "reasonably close in time." 127 N.J. at 338. Although the application or weight to be given to this factor has since been limited, see State v. Rose, 206 N.J. 141, 163 (2011) (stating that "[t]he second prong of the Cofield test, addressing the similarity and temporality of the evidence, is not found in Rule 404(b), and is not universally required"); Williams, supra, 190 N.J. at 131 (recognizing the second factor's "usefulness as a requirement is limited to cases that replicate the circumstances in Cofield"), to complete our analysis, we merely note that six years separated the two events, a fact that does not strengthen the State's argument. See, e.g., State v. Sheppard, 437 N.J. Super. 171, 200 (App. Div. 2014) (observing that a prior offense related to "comments made by defendant at least five years before the stabbing, and possibly much longer").

To the extent applicable, this second factor does not support admission of A.W.'s testimony.

## C. Clear and Convincing

Notwithstanding our obligation to generally defer to a trial judge's exercise of discretion in such matters, State v. Erazo, 126 N.J. 112, 131 (1991), the third factor — that the other-crimes evidence be "clear and convincing" — does not favor admission. We are mindful the trial judge found A.W. credible. And, because he found her credible, the judge concluded the evidence was clear and convincing. But we find this analysis of the third factor to be inadequate because the judge gave no weight to defendant's acquittal of the Florida charges based on A.W.'s testimony.

The trial judge was aware of the acquittal but found the Florida jury's verdict was not binding for these sole reasons:

> I find her testimony to be very credible and I find her to be very credible. And I do find that her testimony, in spite of the fact of the acquittal — I don't know what happened at the State trial in Florida. I don't know how the case was presented, what the jury may or may not have thought. I don't know.
>
> And it, frankly, has no impact on me because I heard the testimony of the witness. I find her to be credible, and I find that evidence of the conduct to be clear and convincing. So the third prong has been met.

It is conceivable, and perhaps this is what the trial judge meant, that the Florida jurors — assuming we could look into

their minds or had access to their deliberations — found A.W.'s testimony to be "clear and convincing" but not persuasive beyond a reasonable doubt. The superficial logic of such an approach, however, is not only based on speculation but largely misses the point of the third factor.

The argument that acquittal-evidence may be admitted because it satisfied a judge's application of the clear and convincing standard even though a jury found it did not suggest the defendant's guilt beyond a reasonable doubt is far too expedient and all too conveniently discards the significance of the acquittal. The third factor was intended as part of a screening process,[8] not a loophole for resurrecting evidence found insufficient for a conviction. <u>Cofield</u>'s screening

---

[8]Previously, courts explained the gatekeeping role as ensuring that other-crimes evidence not be "vague" or "uncertain," <u>Baxter v. State</u>, 110 <u>N.E.</u> 456, 458 (Ohio 1914), but must instead be "plain, clear, and conclusive," <u>Paris v. United States</u>, 260 <u>F.</u> 529, 531 (8th Cir. 1919). In more recent, pre-<u>Cofield</u> cases, our courts required that proof of the other crime be "substantial." <u>State v. Garfole</u>, 76 <u>N.J.</u> 445, 452 n.2 (1978) (in which the Court also held that it must be shown "with reasonable certainty" that the defendant committed the other crime) (internal citations omitted). This progression toward <u>Cofield</u>'s codification — which relied on a law review article, 127 <u>N.J.</u> at 338 (quoting Abraham P. Ordover, <u>Balancing The Presumptions Of Guilt And Innocence: Rules 404(b), 608(b) and 609(a)</u>, 38 <u>Emory L.J.</u> 135, 160 (1989)) — does not suggest the Court deliberately chose the "clear and convincing" standard simply because it fell between the preponderance and reasonable-doubt standards but intended to place a heavy burden on the proponent in order to eliminate the use of uncertain, un-adjudicated allegations.

14                                                                    A-2562-13T2

process occurred when a Florida jury found that what the State now claims was a prior criminal offense was not, in fact, a criminal offense.[9]

## D. The Weighing Process

The fourth Cofield factor requires a determination that "[t]he probative value of the evidence must not be outweighed by its apparent prejudice." Cofield, supra, 127 N.J. at 338. Without repeating what has already been stated, we are satisfied that even if probative value could be found in A.W.'s testimony, it is so greatly outweighed by the prejudicial effect — namely,

---

[9]Assuming arguendo acquittal-evidence is not entirely excluded by the third factor, we would still conclude in this case that the judge's dismissive view of the Florida proceedings warrants reversal. In such a circumstance the State, as the proponent of the other-crimes evidence, should have at least been required to present a full record of the Florida proceedings. The judge expressed that he did not know "what happened" in Florida that led to defendant's acquittal. That is not good enough. When answering in the negative whether a defendant could be tried for the robbery of one of six victims when he had been acquitted in an earlier prosecution of robbing one of the other victims, the Supreme Court held that a court must examine "the record of [the] prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter" before it may determine "whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration"; the inquiry "must be set in a practical frame and viewed with an eye to all the circumstances of the proceedings." Ashe v. Swenson, 397 U.S. 436, 444, 90 S. Ct. 1189, 1194, 25 L. Ed. 2d 469, 475-76 (1970) (internal citations omitted). Answers to the judge's rhetorical question about what happened in Florida should have been provided by the State and — until provided — A.W.'s testimony should have been excluded.

the jury's inevitable assumption that defendant has a propensity to engage in such conduct[10] — as to render it inadmissible.

### III

Although, as we have demonstrated, a routine Cofield analysis leads to the exclusion of this other-crimes evidence, we also conclude that in these and other similar circumstances acquittal-evidence should never be admitted pursuant to N.J.R.E. 404(b).

### A

We start by conceding that our view is not consistent with some earlier decisions that have considered the State's use of acquittal-evidence as other-crimes evidence. In fact, in State v. Yormark, 117 N.J. Super. 315, 337 (App. Div. 1971), certif. denied, 60 N.J. 138, cert. denied, 407 U.S. 925, 92 S. Ct. 2459, 32 L. Ed. 2d 812 (1972), a panel held that evidence offered, pursuant to former Evidence Rule 55, against two of the defendants in a prior prosecution — at which they were acquitted — was properly admitted in a later prosecution because it suggested "guilty knowledge, a corrupt intent, and involvement by the defendants in a common scheme or plan to defraud the

---

[10]Prejudice arises in other forms, as more fully explained in Section III of this opinion.

insurance company in this case."  The court observed that the admission of evidence of "other alleged offenses for which the defendant had been previously acquitted, is upheld by the great weight of authority throughout the country."  Ibid.  This approach was soon after adopted by another panel in Schlue, supra, 129 N.J. Super. at 355.[11]  In addition, Yormark correctly

[11]The rule to which Yormark and Schlue adhered does appear to be the majority rule in this country.  See Dowling, supra, 493 U.S. at 349, 110 S. Ct. at 672, 107 L. Ed. 2d at 718; Ex Parte Bayne, 375 So. 2d 1239, 1241 (Ala. 1979); Ladd v. State, 568 P.2d 960, 968 (Alaska 1977), cert. denied, 435 U.S. 928, 98 S. Ct. 1498, 55 L. Ed. 2d 524 (1978); People v. Griffin, 426 P.2d 507, 510 (Cal. 1967); Kinney v. People, 187 P.3d 548, 554 (Colo. 2008); Moore v. State, 333 S.E.2d 605, 608 (Ga. 1985); State v. Paradis, 676 P.2d 31, 36 (Idaho 1983), cert. denied, 468 U.S. 1220, 104 S. Ct. 3592, 82 L. Ed. 2d 888 (1984); People v. Kennedy, 377 N.E.2d 830, 835 (Ill. App. Ct. 1978); Underwood v. State, 722 N.E.2d 828, 833 (Ind. 2000); State v. Thompson, 39 N.W.2d 637, 640 (Iowa 1949); State v. Searles, 793 P.2d 724, 732 (Kan. 1990); Hampton v. Commonwealth, 133 S.W.3d 438, 442 (Ky. 2004); State v. Cotton, 778 So. 2d 569, 575 (La. 2001); State v. Dean, 589 A.2d 929, 932-33 (Me. 1991); Womble v. State, 258 A.2d 786, 789 (Md. Ct. Spec. App. 1969); Commonwealth v. Barboza, 921 N.E.2d 117, 119-20 (Mass. App. Ct.), certif. denied, 925 N.E.2d 546 (Mass. 2010); People v. Oliphant, 250 N.W.2d 443, 454 (Mich. 1976); State v. Millard, 242 S.W. 923, 926 (Mo. 1922); Koenigstein v. State, 162 N.W. 879, 882-83 (Neb. 1917); People v. Chang, 382 N.Y.S.2d 611, 616 (N.Y. Crim. Ct. 1976); State v. Heaton, 217 N.W. 531, 536 (N.D. 1927); Patterson v. State, 117 N.E. 169, 172 (Ohio 1917); State v. Smith, 532 P.2d 9, 10 (Or. 1975); Commonwealth v. McCall, 786 A.2d 191, 195-96 (Pa. 2001); State v. Bernier, 491 A.2d 1000, 1005 (R.I. 1985); Rhodes v. Commonwealth, 292 S.E.2d 373, 376-77 (Va. 1982); State v. Russell, 384 P.2d 334, 335 (Wash. 1963); State v. Mongold, 647 S.E.2d 539, 549-50 (W. Va. 2007).  By no means, however, is this approach universally accepted. See State v. Perkins, 349 So. 2d 161, 163-64 (Fla. 1977); State v. Wakefield, 278 N.W.2d 307, 309 (Minn. 1979); McMichael v. State, 638 P.2d 402, 403 (Nev. 1982); (continued)

17                                    A-2562-13T2

recognized that an earlier decision, State v. Bartell, 15 N.J. Super. 450, 459-60 (App. Div. 1951), suggested otherwise. And, because the Supreme Court was evenly divided when reviewing that decision, State v. Bartell, 10 N.J. 9 (1952),[12] greater doubt is engendered about the current status of our jurisprudence on this point.[13]

The rationale underlying the decisions in Yormark and Schlue — were we inclined to distinguish them and adopt a more nuanced view of this issue — is that although a defendant must not again be put to the burden of defending against the same charge after having been acquitted, some evidence in the earlier prosecution — not necessarily precluded by the prior jury's verdict — may be admitted if it has relevance to the current prosecution. In other words, evidence from an earlier acquittal

---

(continued)
State v. Scott, 413 S.E.2d 787, 788-89 (N.C. 1992); State v. Holman, 611 S.W.2d 411, 413 (Tenn. 1981); Kerbyson v. State, 711 S.W.2d 289, 290 (Tex. Ct. App. 1986).

[12]No member of the Court wrote an opinion in Bartell.

[13]When the Supreme Court is evenly divided, its concurring and dissenting opinions are not precedential, Mount Holly Twp. Bd. of Educ. v. Mount Holly Twp. Educ. Ass'n, 199 N.J. 319, 332 n.2 (2009), and its judgment leaves in place our decision, Abbamont v. Piscataway Twp. Bd. of Educ., 314 N.J. Super. 293, 300-01 (App. Div. 1998) (quoting Neil v. Biggers, 409 U.S. 188, 192, 93 S. Ct. 375, 378-79, 34 L. Ed. 2d 401, 407 (1972)), aff'd, 163 N.J. 14 (1999). As a result, the conflict between Yormark and Schlue, on the one hand, and Bartell, on the other, persists.

may be admissible in a later prosecution if offered not to suggest defendant's guilt in the earlier matter but as evidence of a particular event or transaction not necessarily rejected as a fact by the earlier jury. Also, such evidence might be admissible if the mere fact that the defendant was facing prosecution in the earlier matter is relevant for some purpose in the later prosecution. For example, in Schlue, we found no error in the admission of evidence offered against the defendant in an earlier bribery prosecution — at the conclusion of which he was acquitted — to demonstrate a motive for obstructing justice in that earlier investigation when so charged in a later indictment. 129 N.J. Super. at 353-55. The difference between those situations and the question presented here is that the State in the earlier cases appears not to have been attempting to prove motive by showing the defendant's guilt in the earlier matter, only that motive was suggested by facts offered during the earlier proceeding that may not have been rejected by the prior jury.

The State's proffer is markedly different here. A.W.'s testimony has been offered to show that defendant, on an earlier occasion, engaged in unlawful sexual contact. Of course,

defendant cannot now be convicted of sexually assaulting A.W.,[14] but it is the State's desire to prove the very fact the State of Florida was unable to prove as a means for convicting defendant of the charges in question here.  In short, unlike what appears to have occurred in Yormark and Schlue, defendant is again being put to the task of defending against A.W.'s allegations.  Stated another way, for the A.W. allegations to have any relevance in this case, the jury would have to conclude that what A.W. alleged had in fact occurred in the face of another jury's contrary verdict.  Accordingly, even if we were bound to Schlue or Yormark — which, of course, we are not, see Brundage v. Estate v. Carambio, 195 N.J. 575, 593-94 (2008); State v. Peralta, __ N.J. Super. __, __ (App. Div. 2014) (slip op. at 4-5) — we would find that the rule those cases announced has no application in the far different circumstances presented here.

These troubling circumstances, and others to which we shortly turn, further buttress our conclusion that acquittal-evidence should not be permitted to show a defendant's guilt on the earlier occasion.  In short, we agree with the common-sense conclusion reached by the Supreme Court of Tennessee when it considered an attempt to prove that the defendant, who operated

---

[14]For that reason, double jeopardy and collateral estoppel principles are not directly implicated.

a jewelry store, had failed to return a watch to its owner (Jenkins) upon the promise to repair, by offering evidence that he had done precisely the same thing to another customer (Morgan) who brought her watch to the defendant to be repaired; the defendant had been tried and acquitted of Morgan's allegations. In these circumstances, the Tennessee Court held:

> Having been acquitted of the alleged prior crime, the defendant cannot be tried a second time for that offense; yet, if evidence of such alleged prior crime is admitted in the case on trial, the defendant is required to do just that; at the second trial he must defend himself not only against the charge at hand but also against inferences that the jury might draw from the evidence that he committed the prior crime although he has been acquitted of it. . . . [E]vidence that the defendant committed an alleged crime other than that for which he is on trial should not be admitted when he has been acquitted of such alleged other crime.
>
> [Holman, supra, 611 S.W.2d at 413.]

This is the only approach that adequately respects the presumption of innocence and the "particular significance" the law attaches to an acquittal. United States v. DiFrancesco, 449 U.S. 117, 129, 101 S. Ct. 426, 433, 66 L. Ed. 2d 328, 340-41 (1980); United States v. Scott, 437 U.S. 82, 91, 98 S. Ct. 2187, 2194, 57 L. Ed. 2d 65, 74 (1978). Although such an event does not precisely generate a double jeopardy violation, see Dowling, supra, 493 U.S. at 348-49, 110 S. Ct. at 672, 107 L. Ed. 2d at

21

717-18, we do hold that the issue is so instinct with this particular constitutional guarantee as to warrant the exclusion of this evidence.

B

We also find the order under review troubling and unsustainable because of a dangling question the trial judge did not consider: if the evidence is admitted, should the jury be told that defendant was acquitted of charges stemming from A.W.'s allegations?  In this regard, we again disagree with Schlue, which held that a jury should not be informed of the acquittal lest the door be opened "to a full collateral investigation into what transpired at the former trial and why the first jury found as it did." 129 N.J. Super. at 356.[15]

---

[15]On this point, Schlue adhered to the minority view, since it is understood that most jurisdictions would allow the accused to respond to the other-crimes evidence with proof of the acquittal.  See Bayne, supra, 375 So. 2d at 1243; Hess v. State, 20 P.3d 1121, 1129-30 (Alaska 2001); State v. Davis, 619 P.2d 1062, 1063 (Ariz. Ct. App. 1980); Philmon v. State, 593 S.W.2d 504, 507 (Ark. Ct. App. 1980); Griffin, supra, 426 P.2d at 511; Kinney, supra, 187 P.3d at 556; State v. Anonymous, 389 A.2d 1270, 1274 (Conn. Super. Ct. 1978); People v. Bedoya, 758 N.E.2d 366, 381 (Ill. App. Ct. 2001), appeal denied, 766 N.E.2d 241 (Ill. 2002); Hare v. State, 467 N.E.2d 7, 18 (Ind. 1984); State v. Washington, 257 N.W.2d 890, 893 (Iowa 1977), cert. denied, 435 U.S. 1008, 98 S. Ct. 1881, 56 L. Ed. 2d 390 (1978); Nolan v. State, 131 A.2d 851, 857-58 (Md. 1957); Millard, supra, 242 S.W. at 927; State v. Hopkins, 219 P. 1106, 1109 (Mont. 1923); Koenigstein, supra, 162 N.W. at 883; Walker v. State, 921 P.2d 923, 927 (Nev. 1996); State v. Calloway, 150 S.E.2d 517, 518
(continued)

We agree the spectre of re-trying the Florida case within the trial of this case is greatly disturbing. Unlike Schlue, we think this complication is a reason for excluding the evidence, not a reason for unfairly depriving a defendant of the presumption of innocence and the benefit of an acquittal of those very allegations.

C

Additional constitutional concerns counsel against the admission of acquittal-evidence.

At the risk of complicating what a principled application of Cofield compels, we believe the same result is warranted by a practical analysis of the problem when played out further in the

(continued)
(N.C. 1966); Smith, supra, 532 P.2d at 11-12; Bernier, supra, 491 A.2d at 1005-06; State v. Kassahun, 900 P.2d 1109, 1110 (Wash. Ct. App. 1995). Only a few jurisdictions, consisting of most of the federal courts of appeals, see, e.g., Prince v. Lockhart, 971 F.2d 118, 122 (8th Cir. 1992) and cases cited therein, and a few states, People v. Bolden, 296 N.W.2d 613, 617 (Mich. Ct. App. 1980); State v. Heaton, 217 N.W. 531, 536 (N.D. 1927), have held otherwise. We further note that while Schlue was guided by concerns about confusion over a trial within a trial, the principle on which the Michigan court barred evidence of an acquittal of the prior offense springs from a determination that seems foreign to the manner in which American courts value the presumption of innocence. That is, in Borden, the court held that once a prosecutor produces evidence sufficient to show the defendant "probably committed the act," the jury "should not be confused by the additional information of an acquittal which could mislead them into believing that the defendant absolutely did not commit the prior similar acts." 296 N.W.2d at 617.

prosecution. This is demonstrated by considering how a jury in such a situation should be instructed.

Our Legislature has spoken about the burdens applicable to various aspects of a criminal prosecution. In N.J.S.A. 2C:1-13(a), the Legislature codified In re Winship, 397 U.S. 358, 361, 90 S. Ct. 1068, 1071, 25 L. Ed. 2d 368, 373-74 (1970), declaring that "[n]o person may be convicted of an offense unless each element of such offense is proved beyond a reasonable doubt" and that, "[i]n the absence of such proof, the innocence of the defendant is assumed." In addition, "[w]hen the application of the code depends upon the finding of a fact which is not an element of an offense" — arguably the circumstance here — and "unless the code otherwise provides" — it does not — "[t]he burden of proving the fact" is on the party "whose interest or contention will be furthered if the finding should be made." N.J.S.A. 2C:1-13(d). If A.W.'s testimony were admissible, these statutes clearly saddle the State with the burden of proving the truth of her testimony and defendant's commission of this "other crime." In defining the rigor of the burden of persuasion on that fine point, however, the statute declares only that "[t]he fact must be proved to the satisfaction of the court or jury, as the case may be." N.J.S.A. 2C:1-13(d)(2).

At first glance, it may be said that this statute begs the question by failing to provide a precise response to the following: to what degree of certainty must the State prove a prior crime offered for a reason permitted by N.J.R.E. 404(b)? But the Legislature may have understood the courts were better positioned to fix a burden of persuasion depending on the particular circumstances in a given case. That is, the Legislature likely recognized that while the elements of the offense, and not every fact relevant to a criminal prosecution, must be proven beyond a reasonable doubt, see Patterson v. New York, 432 U.S. 197, 207, 97 S. Ct. 2319, 2325, 53 L. Ed. 2d 281, 290 (1977); State v. Gross, 121 N.J. 1, 15 (1990), the importance of a disputed fact may vary, and the defining of the burden of proving that particular fact ought to be adjusted by consideration of the fact's importance. In other words, where the disputed fact has limited relevance a less strenuous standard may be appropriate, while a heavy standard should be imposed when the resolution of the disputed fact is highly critical to the jury's determination of the defendant's guilt.

This subject has garnered little attention in our decisions. Noteworthy is State v. Wilson, 158 N.J. Super. 1, 10 (App. Div.), certif. denied, 79 N.J. 473 (1978), where it was held that an instruction that a jury find the prior offense to

have occurred by clear and convincing evidence was a "higher burden of proof than was necessary" and placed "an unnecessary burden on the State's case."[16] It would appear to us that <u>Wilson</u> was essentially overruled by <u>Cofield</u>; that is, if other-crimes evidence must be found by the gatekeeper to be "clear and convincing" then the jury should, at the very least, be required to find that the other crime occurred by clear and convincing evidence. We find no logic in allowing a jury to find a fact on a lesser standard than applied when its admission was sought.

We observe that the model jury charges utilized in our criminal courts also beg the question, stating only that a jury cannot give any weight to other-crimes evidence unless "satisfied" of the other crime's commission. <u>Model Jury Charge (Criminal)</u>, "Proof of Other Crimes, Wrongs, or Acts (<u>N.J.R.E.</u> 404(b))" (2007). The model charge does not suggest whether the jury has to be satisfied the other crime occurred by a preponderance, by clear and convincing evidence or beyond a reasonable doubt.

---

[16] In <u>Wilson</u>, the defendant argued the trial judge erred in instructing the jury not to consider evidence of prior alleged episodes of child abuse by the defendant in the prosecution of charges that he murdered the same child unless the jury determined the State proved these earlier instances by "clear and convincing evidence." <u>Id.</u> at 8-10.

To be sure, not every piece of evidence offered by the prosecution need be scrutinized by use of the reasonable-doubt standard. See Patterson, supra, 432 U.S. at 207, 97 S. Ct. at 2325, 53 L. Ed. 2d at 290; Gross, supra, 121 N.J. at 15. We would, however, suggest that consideration of the constitutional ramifications of such instructions must be carefully weighed in instances, such as this, where the State seeks to convict in large measure because of the accused's alleged commission of a prior offense.[17] In many instances, and we believe this is one, the admission of other-crimes evidence without an instruction to the jury that the prior offense be proven beyond a reasonable doubt would invite a conviction in violation of the principles discussed in Winship, supra, 397 U.S. at 363-64, 90 S. Ct. at 1072-73, 25 L. Ed. 2d at 375, and State v. Hill, 199 N.J. 545, 558-59 (2009).

At oral argument in this court, the State insisted upon the importance of A.W.'s testimony, referring to the case without it as a classic "he said/she said" circumstance; we interpret this to mean that the State questions its ability to prove defendant's guilt beyond a reasonable doubt without this other-

_____

[17]We base this conclusion not on our own view of what is revealed by the limited record in this interlocutory appeal but on the State's own strenuous insistence upon the importance of this evidence.

27

crimes evidence.  Considering the crucial role A.W.'s testimony would play in this prosecution if permitted, we would be hard-pressed, in light of <u>Winship</u> and <u>Hill</u>, to approve of any jury instruction that would permit the jury to find that what A.W. asserts actually occurred by anything less than proof beyond a reasonable doubt.  <u>Cf.</u> <u>State v. Yough</u>, 49 <u>N.J.</u> 587, 601 (1967) (requiring that trial judges apply the reasonable-doubt standard in determining the voluntariness and admissibility of a confession "in the overall [] sound administration of justice").

To be clear, we do not suggest all other-crimes evidence must be proven beyond a reasonable doubt.  Our comments are limited to the present case, and cases like it, where there is little question that other-crimes evidence will play a pivotal role in the adjudication of guilt.[18]

D

The reasonable-doubt standard, which breathes life into the presumption of innocence, is vital to our criminal justice system.  Standing as a bulwark against criminal convictions based on factual error, the reasonable-doubt standard prevents

---

[18]This conclusion brings us full circle. If, as we have determined, this other-crimes evidence, if admissible, must be proven beyond a reasonable doubt, then defendant's acquittal of the alleged prior crime would end the inquiry because the jury here would be asked to decide the exact question conclusively decided by the Florida jury.

"the moral force of the criminal law" from being "diluted" by a standard "that leaves people in doubt whether innocent men are being condemned," and contributes to "our free society" the confidence that "every individual going about his ordinary affairs" may possess that the government "cannot adjudge him guilty of a criminal offense without convincing a proper factfinder of his guilt with utmost certainty." Winship, supra, 397 U.S. at 363-64, 90 S. Ct. at 1072-73, 25 L. Ed. 2d at 375; see also Hill, supra, 199 N.J. at 558-59. These principles inform our conclusion that acquittal-evidence, in a setting like this, could never be admitted in a subsequent prosecution. When such evidence cuts so close to the heart of the adjudication of guilt, the jury would have to be instructed to find that the prior alleged crime occurred beyond a reasonable doubt. And, because in that circumstance another jury would have found the prior offense did not occur beyond a reasonable doubt, a subsequent jury would be foreclosed from reaching a different result.

Ultimately, acquittal evidence should not be admitted in the present circumstances because the process envisioned by the order under review gives insufficient weight to the particular significance assigned to an acquittal, DiFrancesco, supra, 449 U.S. at 129, 101 S. Ct. at 433, 66 L. Ed. 2d at 340-41, and

because of the many dangers inherent in its use. In this regard, we agree with Justice Brennan's cataloging of these inherent vices in his dissenting opinion in <u>Dowling</u>. Among others, Justice Brennan emphasized these two chief concerns:

> First, "[o]ne of the dangers inherent in the admission of extrinsic offense evidence is that the jury may convict the defendant not for the offense charged but for the extrinsic offense. This danger is particularly great where . . . the extrinsic activity was not the subject of a conviction; the jury may feel the defendant should be punished for that activity even if he is not guilty of the offense charged." Alternatively, there is the danger that the evidence "may lead [the jury] to conclude that, having committed a crime of the type charged, [the defendant] is likely to repeat it." Thus, the fact that the defendant is forced to relitigate his participation in a prior criminal offense under a low standard of proof combined with the inherently prejudicial nature of such evidence increases the risk that the jury erroneously will convict the defendant of the presently charged offense.
>
> [<u>Dowling</u>, <u>supra</u>, 493 <u>U.S.</u> at 361-62, 110 <u>S. Ct.</u> at 679, 107 <u>L. Ed.</u> 2d at 726 (citations omitted).]

And, in this same context, we lastly recognize the applicability of the concept of fundamental fairness, which "require[s] procedures to protect the rights of defendants at various stages of the criminal justice process even when such procedures [are] not constitutionally compelled." <u>Doe v. Poritz</u>, 142 <u>N.J.</u> 1, 108 (1995). Even if <u>N.J.R.E.</u> 404(b) could be expansively

interpreted as authorizing the order under review, we conclude that admitting the evidence in question is nevertheless tantamount to having one jury render a verdict at odds with the verdict of another — a consequence odious to the presumption of innocence and the fair administration of our criminal justice system.

IV

To summarize, we conclude that a principled Cofield analysis bars admission of this evidence, and the trial judge's contrary ruling constituted an abuse of discretion. We also conclude that acquittal-evidence should never be admitted in a later prosecution when offered to show that the prior charged offense actually occurred.

The order permitting the admission of A.W.'s testimony is reversed, and the matter remanded for further proceedings. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2562-13T2