**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2445-16T1

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

ALAN A. BIENKOWSKI,

      Defendant-Appellant.

          Submitted February 27, 2019 – Decided May 30, 2019

          Before Judges Alvarez and Nugent.

          On appeal from Superior Court of New Jersey, Law Division, Monmouth County, Indictment No. 16-07-1181.

          Joseph E. Krakora, Public Defender, attorney for appellant (Frank M. Gennaro, Designated Counsel, on the brief).

          Christopher J. Gramiccioni, Monmouth County Prosecutor, attorney for respondent (Lisa Sarnoff Gochman, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Tried by a jury, defendant Alan Bienkowski was convicted of first-degree murder, N.J.S.A. 2C:11-3(a)(1) and/or (2) (count one); first-degree felony murder, N.J.S.A. 2C:11-3(a)(3) (count two); first-degree armed robbery, N.J.S.A. 2C:15-1(a)(3) (count three); second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b)(1) (count four); second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a)(1) (count five); and third-degree receiving stolen property, N.J.S.A. 2C:20-7(a) (count six). At a second trial with the same jury, defendant was found guilty of second-degree certain persons not to have weapons, N.J.S.A. 2C:39-7(b)(1) (count seven). At that second trial, the jury also found that defendant had been previously convicted of another murder, the statutory predicate for sentencing under N.J.S.A. 2C:11-3(b)(4)(a).

The trial judge merged defendant's convictions for murder, felony murder, robbery, and possession of a weapon for an unlawful purpose, and sentenced defendant to life without parole. He imposed ten years imprisonment with five years parole ineligibility on the certain persons not to possess, in accordance with the Graves Act, N.J.S.A. 2C:43-6(c), and five years on the receiving stolen property, to be served concurrently.

A-2445-16T1

Michael Wells, an employee of a business located next door to another enterprise at which defendant had been employed as a delivery driver, was the murder victim. Defendant and Wells were acquainted, and defendant was a listed contact in the victim's cell phone.

Wells's widow testified at trial that he worked a 4 a.m. to 12 p.m. shift, Monday through Friday, and left his home between 3:05 and 3:10 a.m. to open up by 4:00 a.m. On his way to work, Wells would often stop to get coffee, cigarettes, and chips. Wells's widow said he was known to carry large sums of cash, between $500 to $1000, in a rubber band folded over his driver's license and debit card. A coworker, Wells's manager, and Wells's son confirmed this habit during the trial.

Surveillance cameras from multiple businesses near the scene of the crime, as well as highway cameras, captured defendant's truck approaching Wells's workplace, and his truck circling the site between 3:21 and 3:23 a.m. Defendant's girlfriend and landlord testified that defendant was the only person who ever drove his truck.

At about the same time, the victim's truck was recorded traveling towards Wells's work site by a West Long Branch police cruiser with an automatic license plate reader. At 3:26 a.m., a person was seen walking towards the

victim's workplace, and a few minutes later, video showed the victim's truck headed down the street. When the victim's truck pulled into a nearby driveway, the security camera activated and filmed someone running in front of the vehicle with a gun in his right hand and a long stick in the other.

At approximately the same time, a New Jersey Transit employee saw a truck, later identified as the victim's, racing down the street spinning or fishtailing. The eyewitness heard two pops he recognized as gun fire and reported the disturbance to his supervisor. At approximately 4:01 a.m., the video camera outside a business about a mile away recorded defendant's truck leaving the area.

When other employees arrived, they immediately noticed a bag of chips, cigarettes, and a cell phone on the ground next to the front door. When they contacted the general manager to report the front door of the store was locked and that the victim's belongings were on the ground outside, he told them to call the police.

A few hours later, the victim's body was discovered on top of a metal tire iron in the back yard of a residence some 300 yards away. He had no cash on his person. Police found the victim's pickup truck, still running, in a nearby driveway with some $3000 in cash in a locked glove compartment.

A-2445-16T1

The medical examiner testified that a single bullet penetrated the victim's left arm, piercing his aorta and lung, causing death. He had also sustained blunt force trauma to the back of his head. Approximately a year later, a handgun fully loaded with the same caliber of ammunition that killed Wells was found buried in the front yard of defendant's trailer. A ballistic examination identified the gun to be the murder weapon.

At 9:30 the morning of the murder, defendant paid his outstanding Verizon bill so his cell phone could be reactivated. The store employee testified defendant paid the bill from "a wad of cash [in] a rubber band." She recalled the transaction because defendant requested exact change and commented that "money was tight." That same day, defendant paid off his trailer home rental and other fees in cash. His bank account had been closed earlier in the month because of a negative balance. Defendant's former girlfriend as well as the trailer park manager testified defendant had experienced significant financial problems from late 2012 to April 2013.

Defendant's girlfriend also testified that sometime after the murder, defendant showed her a newspaper article about Wells's death and told her that he used to work with him. He claimed the victim "was a drug dealer[,] carried a bulk of money, and . . . would open the place first thing in the morning."

5

When the authorities executed a consent search of defendant's bedroom, they located several handwritten notes expressing remorse related to his financial circumstances, and instructing his family to sell his possessions upon his death.

Pretrial, the judge ruled in limine that the State could present evidence of defendant's financial difficulties as motive for the armed robbery and murder, including records of defendant's closed bank account and his alleged suicide notes. The State could also present proof that the victim habitually carried large sums of cash in a rubber band, and that defendant paid overdue bills in cash the morning of the murder. In deciding to admit the evidence over defendant's objection, the judge observed that although clearly poverty alone does not establish a motive for robbery, defendant's payment of his bills in cash the morning of the victim's killing was highly probative.

During the charge conference, the State requested a flight charge. Having seen a video which depicted defendant either quickly walking or running "after the robbery to avoid detection" the judge overruled defendant's objection. The judge read the jurors the model jury charge. He did not specify the charges to which it applied.

A-2445-16T1

The State sought sentence enhancements, anticipating that defendant would be convicted, pursuant to N.J.S.A. 2C:11-3(b)(4)(f) and (g), in addition to (a). Thus, at the end of the first trial, the jurors agreed the murder was committed for the purpose of escaping apprehension during flight from a robbery.

Defendant raises the following points on appeal:

POINT ONE:
THE ADMISSION OF EVIDENCE OF DEFENDANT'S
FINANCIAL DIFFICULTIES AS EVIDENCE OF HIS MOTIVE TO ROB AND KILL THE VICTIM DENIED DEFENDANT A FAIR TRIAL

POINT TWO:
THE TRIAL COURT ERRED BY ADMITTING EVIDENCE OF THE HABITS OF MICHAEL WELLS

POINT THREE:
THE TRIAL COURT'S JURY INSTRUCTION ON THE
DOCTRINE OF FLIGHT WAS ERROR WHICH DENIED DEFENDANT A FAIR TRIAL

POINT FOUR:
THE MANDATORY SENTENCE OF LIFE WITHOUT THE POSSIBILITY OF PAROLE WAS IMPROPERLY IMPOSED ON DEFENDANT

I.

A-2445-16T1

Evidence is considered relevant if it has a tendency "to prove or disprove any fact of consequence to the determination of the action."  N.J.R.E. 401.  Except as provided elsewhere in the New Jersey Rules of Evidence or by law, "all relevant evidence is admissible."  N.J.R.E. 402.  The decision to admit or exclude certain evidence is "firmly entrusted to the trial court's discretion." State v. Prall, 231 N.J. 567, 580 (2018) (quoting Estate of Hanges v. Metro. Prop. & Cas. Ins. Co., 202 N.J. 369, 383-84 (2010)).

On appellate review of a trial court's evidentiary ruling, the decision will be upheld "absent a showing of an abuse of discretion, i.e., there has been a clear error of judgment."  State v. J.A.C., 210 N.J. 281, 295 (2012) (quoting State v. Brown, 170 N.J. 138, 147 (2001)).  Thus, to overturn such a decision, the prior ruling must have been "so wide of the mark that a manifest denial of justice resulted."  Ibid. (quoting State v. Marrero, 148 N.J. 469, 484 (1997)).

It is well-settled that motive evidence has a special role in modern jurisprudence by "its unique capacity to provide a jury with an overarching narrative, permitting inferences for why a defendant might have engaged in the alleged criminal conduct."  State v. Calleia, 206 N.J. 274, 293 (2011).  In a criminal prosecution, courts will generally permit a wider range of evidence to show motive or intent compared to other issues.  Ibid. (citing State v. Rogers,

19 N.J. 218, 228 (1955)). In fact, "[a]ll evidentiary circumstances which are relevant to or tend to shed light on the motive or intent of the defendant . . . are admissible in evidence against him . . . ." Ibid.; see also Rogers, 19 N.J. at 229 ("An inference could well be drawn from it that the defendant was in need of money and the funds he spent during the week following the murders were not his own.").

This is not to say, however, that motive may be suggested purely by financial difficulties. State v. Terrell, 359 N.J. Super. 241, 247 (App. Div. 2003); see also State v. Mathis, 47 N.J. 455, 472 (1966) ("in general terms, there must be something more than poverty to tie a defendant into a criminal milieu."). Motive evidence is not permitted when relevance verges on ordinary propensity, in violation of N.J.R.E. 404(a). State v. J.M., Jr., 438 N.J. Super. 215, 222-23 (App. Div. 2014). Nonetheless, if motive rests solely on circumstantial evidence, the evidence should not be excluded as incidental, since even "an inference of why a defendant may have engaged in criminal conduct" is admissible. Calleia, 206 N.J. at 294.

Defendant contends that evidence of his financial situation as the motive for the killing deprived him of a fair trial. His argument is grounded on, first, the unduly prejudicial impact of the evidence in the absence of a 404(b) State v.

9

Cofield[1] analysis.  Additionally, defendant contends that this evidence required a limiting instruction and none was given, thus entitling him to a new trial.

In our view, defendant's financial condition, although certainly not a positive, was not so damaging as to have required a 404(b) analysis or had a prejudicial effect on the jury's deliberative process.  The State did not suggest that defendant committed the crime simply because he was poor; rather, the State presented evidence that the morning of the murder defendant paid long-standing bills with cash, retrieving the cash from a roll described as similar in appearance to the manner in which the victim carried his money.

Given that the prejudice that inured to defendant because of his financial difficulties, if any, would have been minimal, no limiting instruction would have been needed any more than a 404(b) hearing was required.  Defendant's financial situation was clearly relevant, however, as defined in N.J.R.E. 401—it was "evidence having a tendency in reason to prove . . . any fact of consequence to the determination of the action."  The State did not suggest defendant's impecunious state was a generalized motive to commit crime.  See, for example, State v. Martini, 131 N.J. 176, 266 (1993) ("evidence of a defendant's financial state should not be admitted nor commented on.").

---

[1]  127 N.J. 328 (1992).

Even if it was error to omit a limiting instruction, that omission was harmless. The omission, not complained of at trial, was not clearly capable of producing an unjust result. See R. 2:10-2; State v. Lofton, 146 N.J. 295, 394 (1996). The probative value of the evidence of financial motive greatly exceeded the risk of any undue prejudice. See N.J.R.E. 403. The circumstantial evidence in the case was overwhelming. We see no abuse of discretion in the judge's decision to admit the evidence, and the absence of a limiting instruction was not plain error.

## II.

Evidence of habit is admissible to prove a person acted in conformity therewith. N.J.R.E. 406(a). Similarly, specific instances of conduct are also admissible to prove habit "if evidence of a sufficient number of such instances is offered" to support such a finding. N.J.R.E. 406(b). "In contrast, '[e]vidence of a person's character or character trait, including a trait of care or skill or lack thereof, is not admissible for the purpose of proving that the person acted in conformity therewith . . . .'" Verni ex rel. Burstein v. Harry M. Stevens, Inc., 387 N.J. Super. 160, 190 (App. Div. 2006) (quoting N.J.R.E. 404(a)). Specificity distinguishes habit from character evidence. Id. at 190-91 (citing Sharpe v. Bestop, Inc., 158 N.J. 329, 332 (1999)). Contrary to prohibited

11

character evidence of a person's trait, habit refers to a specific and routine practice that is "semi-automatic." Id. at 191.

Defendant contends that the proofs regarding the victim's habit of carrying large sums of cash wrapped in a rubber band on a daily basis were insufficient. This claim has so little merit as to not warrant much discussion in a written opinion. R. 2:11-3(e)(2). The record contains ample testimony by multiple individuals, including Wells's wife and his son; therefore, the requirements of N.J.R.E. 406(a) were met.

If evidence of habit is admitted, it is incumbent on the trial judge to charge the jury as to its proper use through a limiting instruction. See State v. Radziwil, 235 N.J. Super. 557, 568 (App. Div. 1989). But the court's failure to give a limiting instruction in this case was also harmless. This error will be disregarded as alone it was incapable of producing an unjust result.

III.

In his third point, defendant contends that the instruction on flight was erroneous because defendant was never clearly identified on the video tapes shown to the jury as the person on film, the instruction was applied generally to all the offenses enumerated in the indictment, and the instruction was capable of unduly influencing the jury's decision making.

It was the jury's exclusive responsibility to determine whether the video footage of defendant's truck and of a person running sufficiently identified him. This process was adequately described to them in the flight instruction.

There was ample circumstantial evidence pointing to defendant on various surveillance videos as he arrived at and left the scene. The perpetrator wore a light colored sweatshirt and sweatpants, which defendant routinely wore. His vehicle was depicted on the films.

That the instruction did not specify the counts to which it applied is inconsequential. The robbery in this case was committed with a handgun, and the killing was perpetrated during the course of the robbery. Thus, the flight charge was available as to all the offenses.

That the judge charged the jury as to flight did not unduly prejudice defendant with reference to the aggravating sentencing factors, N.J.S.A. 2C:11-3(b)(4)(f) and (g). The flight instruction was one of many the judge gave intended to focus the jury's attention on their obligation to find guilt only if they considered the State's proofs to establish it beyond a reasonable doubt. Nothing about the fact the flight instruction was given would have prejudiced jurors or predisposed them to find an aggravating factor.

IV.

13

Defendant's final argument focuses on his sentence, specifically, that all the statutory sentencing factors, N.J.S.A. 2C:11-3(b)(4)(a), (f), and (g), were improperly submitted. The jury had a basis for finding all of those factors.

Once defendant was convicted earlier of murder, even if that murder actually occurred approximately a month after this one, that sufficed under (a). The statute does not talk about a defendant committing a killing, rather, it talks about a defendant being "convicted" of another murder. A conviction will be deemed final when the sentence is imposed and may be an aggravating factor regardless of whether it is on appeal.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2445-16T1