**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5901-13T4

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

EDGAR TORRES, a/k/a TORRES EDGAR and
TORRES C# 245239 EDGAR,

    Defendant-Appellant.

_____

Submitted March 22, 2017 — Decided  May 31, 2017

Before Judges Accurso and Lisa.

On appeal from Superior Court of New Jersey, Law Division, Monmouth County, Indictment No. 12-09-1539.

Joseph E. Krakora, Public Defender, attorney for appellant (Frank M. Gennaro, Designated Counsel, on the brief).

Christopher J. Gramiccioni, Monmouth County Prosecutor, attorney for respondent (Monica do Outeiro, Assistant Prosecutor, of counsel and on the brief).

Appellant filed a pro se supplemental brief.

PER CURIAM

Defendant Edgar Torres was charged in a single superseding indictment with five armed bank robberies on different dates between 2006 and 2011. His motion to exclude statements to the police he made on February 25 and March 11, 2011 was denied. But his motion to sever and try separately each armed robbery was granted in part, with the court ordering the three armed robberies occurring in 2010 and 2011 severed and tried separately from the two robberies in 2006 and 2009.

The more recent bank robberies were tried first. Defendant was convicted of all three robberies and sentenced in the aggregate to an extended term of forty years in State prison subject to the periods of parole ineligibility and supervision required by the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2. We affirmed, rejecting defendant's arguments that the court erred in denying his motions to exclude his statements to police and to sever and try each armed robbery standing alone. State v. Torres, No. A-3096-12 (App. Div. May 7, 2015) (slip op. at 6-7, 14-16). The Supreme Court subsequently denied defendant's petition for certification. State v. Torres, 223 N.J. 556 (2015).

In the second trial, a jury convicted defendant of first-degree robbery, N.J.S.A. 2C:15-1, and second-degree possession

of a weapon for an unlawful purpose, <u>N.J.S.A.</u> 2C:39-4a, in connection with the 2006 bank robbery; and second-degree robbery in connection with the 2009 robbery, acquitting him of the attendant weapons offense. The same judge presided over both trials and sentenced defendant on these convictions, after merger, to a twenty-year NERA term on the first-degree robbery and to a consecutive ten-year NERA term on the second-degree robbery, consecutive to the forty-year, extended-term sentence defendant is already serving in connection with the first three robberies.

Defendant appeals, raising the following issues through counsel.

> I. THE TRIAL COURT ABUSED ITS DISCRETION BY DENYING DEFENDANT'S REQUEST TO REVISIT THE DECISIONS ON THE <u>MIRANDA</u> AND SEVERANCE OF OFFENSES MOTIONS.
>
> II. THE TRIAL COURT'S REFUSAL TO REDACT FROM DEFENDANT'S STATEMENT TO POLICE REFERENCES TO HIS DRUG USE DENIED DEFENDANT A FAIR TRIAL.
>
> III. THE TRIAL COURT ERRED BY DENYING DEFENDANT'S JUDGMENT OF ACQUITTAL AND NEW TRIAL MOTIONS.
>
> IV. THE TRIAL COURT'S RULING ON THE USE OF THE VIDEO PORTION OF DEFENDANT'S STATEMENT TO POLICE CHILLED HIS RIGHT TO TESTIFY ON HIS OWN BEHALF.
>
> V. DEFENDANT RECEIVED AN EXCESSIVE SENTENCE.

He adds the following issues in his pro se supplemental brief.

Point 1

The Trial Court error in dismissing the original presentation from May 9, 2011.

Point 2

The presentation of May 23, 2011 should have been dismissed as defective because the State failed to present sufficient evidence of one or more elements of each charged offense.

Point 3

The presentation from May 23, 2011 was defective because the prosecutor infringed upon the grand jury's decision making process.

Point 4

The Trial Court error in not granting defendant motion to dismiss indictment based on prosecutorial misconduct.

Point 5

The Trial Court error in granting the State's superseding indictment based on a decision that had no merit on the motion at hand.

Point 6

The prosecutor gave the Trial Court misrepresentation by stating that in the second grand jury presentation on May 23, 2011 that, that grand jury re-voted to indict defendant on first degree armed robbery.

Point 7

The prosecutor sought a superseding
indictment that increased the punishment
after defendant invoked his right to a jury
trial.

Point 8

The State gave misrepresentation to the
Trial Court that the initial indictment was
a first degree armed robbery and second
degree possession of a weapon for an
unlawful purpose.  By doing so the State
misinformed the Trial Court to the facts.

Point 9

The State sought a superseding indictment in
retaliation because defendant informed the
Trial Court that defendant was not indicted
to a first degree crime as it was drafted in
the initial indictment.

Point 10

The Trial Court erred in allowing the State
to seek a superseding indictment based on
the same facts that were presented on the
initial indictment to obtain a higher degree
then the original indictment and "up the
ante."

Because our review of the record convinces us the judge did not err in ruling on any of the motions defendant challenges, and his pro se arguments as to the indictment are without sufficient merit to warrant discussion in a written opinion, R. 2:11-3(e)(2), we affirm his convictions.  For reasons explained below, however, we remand for a new sentencing hearing.

A-5901-13T4

The State presented the testimony of two bank tellers, each of whom testified they were robbed, one in 2006 and the other in 2009, by a man of medium build, average height, who approached their stations with a plastic bag and a black gun and demanded large bills.  Although a witness saw a man he had earlier seen get out of a red car, run from the bank following the 2006 robbery, and police recovered the plastic bag the robber carried and a pellet gun in pieces near a dumpster behind the bank, investigators made no headway in identifying the perpetrator of either heist.

Both crimes went unsolved until 2011, when defendant was arrested in connection with the later three robberies. Following defendant's February 25, 2011 statement, in which he confessed to the three robberies in 2010 and 2011 while armed with a pellet gun, investigators decided to question him about other unsolved robberies, including the one from 2006.  On March 11, 2011, defendant gave another statement in which he again confessed to the three robberies in 2010 and 2011 and also confessed to the 2006 and 2009 robberies.

In his second statement, defendant advised the investigators he was aware they had already talked to the person who owned the red car he borrowed for the 2006 robbery.  He admitted having his girlfriend drive and wait for him while he

robbed both banks but insisted "she had no clue what . . . was going on." Defendant claimed he "told her[,] . . . look I'm picking [up] some dope, just, we got to meet him over here." When the detective sought to clarify that defendant's girlfriend had no involvement in the robberies and, instead believed she was driving defendant to pick up drugs, defendant replied:

> That was the whole thing...I never wanted her involved in anything I was doing. I didn't want her to have any knowledge of what I was doing so I would lie to her and tell her, yo I'm gonna go pick up, I need you to drive cause I don't feel good to be driving. . . . I don't need to get pulled over.

Defendant also claimed that while he could not remember whether he was armed when he committed the 2009 robbery, he allowed he "probably had [a gun]" but could not say he "flashed it." When the detective asked what kind of gun would he have been carrying, defendant replied, "Been a pellet gun. Never, never, never, anything I've ever done was actually with an actual gun." Defendant claimed he did not carry a real gun because "I don't need a trigger to go off and somebody getting accidently killed." "My intentions was solely one thing[,] get the money[,] get the fuck out, go get high[,] . . . see what tomorrow brings."

7                                                         A-5901-13T4

In advance of defendant's second trial, new counsel moved to revisit the court's prior rulings on the admissibility of defendant's confessions and severance. Counsel argued the March 11 statement was taken in violation of State v. Tucker, 137 N.J. 259 (1994), cert. denied, 513 U.S. 1090, 115 S. Ct. 751, 130 L. Ed. 2d 651 (1995), because defendant was in custody and had already been assigned counsel on the 2010-2011 armed robbery charges and thus should not have been questioned without counsel present. As to severance, defendant claimed there was no connection between the 2006 and 2009 robberies, and the only direct evidence linking defendant to the 2009 robbery was his confession. Counsel argued trying the two crimes together risked the jury convicting defendant of the 2009 robbery because it believed him guilty of the 2006 heist.

After hearing argument, the court declined to revisit either ruling. The judge noted he had considered defendant's motion to exclude his confessions before ruling on his severance motion, and thus considered both confessions as they related to all five robberies. The judge concluded both rulings were the law of the case, and that defendant had not offered a persuasive reason for the court to reconsider either decision.

Defendant also moved to redact his March 11 confession to remove any references to his drug use and that he was a heroin

addict. The court ordered several references to drugs removed, but agreed with the prosecutor that defendant's statements regarding the lies he told his girlfriend to avoid her learning that he intended to rob a bank did not relate to "prior bad acts. It's his statement of what occurred that day, why and how it occurred." Accordingly, those statements were not redacted but included in the recording of the confession played for the jury.

Finally, defendant moved to prohibit the State from playing the video portion of the March 11 confession because he was arrayed in prison garb. The court granted the motion, but noted:

> If the defendant gets on the stand, and
> attempts to come up with the same story
> he came up with the in the first trial,
> which the jury did not believe, which is
> that the detectives were riding him around
> force-feeding him facts, then I will with
> a curative instruction permit the State to
> use the video of this confession on rebuttal.
> Because it does clearly show the defendant's
> demeanor, and the manner of delivery of his
> statements, and the confession.

Although defendant did not object at the time, he moved several days later for the judge to recuse himself pursuant to Rule 1:12-1(d), for having expressed a view of the proofs in the first trial. Defendant claimed the court's statements as to defendant's credibility could affect defendant's theory in the

second trial and compromise his right to testify in his own defense.

In denying the motion, the judge stood by his assessment of the proofs in the first trial, but noted the cases were "[c]ompletley different, that's why they're severed." The judge reiterated his ruling that the video portion of the March 11 confession would be excluded at defendant's request. But should defendant contend at trial that his confession was coerced, the video would become "evidential" as depicting his demeanor and the manner in which he made the statement to the police.

Following the guilty verdict, defendant filed a motion for judgment of acquittal, or, in the alternative, for a new trial. He argued the State failed to present legally sufficient evidence to corroborate his confessions; that he should have been afforded a new suppression hearing to determine whether the police engaged in an impermissible "question-first, warn-later" interrogation; that his March 11 statement should have been excluded on Sixth Amendment grounds; and that the court should have reconsidered its prior ruling, granting his motion to sever and try separately the 2006 and 2009 robberies.

The court denied the motions. The judge found the State provided additional evidence beyond defendant's own confession as to both the 2006 and 2009 robberies, and thus any

10

inconsistencies between the confession and the State's other evidence were properly submitted for the jury's consideration. The judge again determined his prior ruling to exclude defendant's statements was the law of the case and given the absence of any "new or overriding circumstance," defendant was not entitled to a second hearing to determine whether the police engaged in an impermissible "question-first, warn-later" interrogation. The court further found defendant's Sixth Amendment right to counsel regarding the 2006 and 2009 robberies had not attached at the time of his March 11 statement because those crimes were not the same offenses for which defendant was then in jail, nor based on the same facts.

Finally, the judge found defendant was not entitled to re-litigate the court's decision to sever the counts of the indictment relating to the five robberies for two trials corresponding to his two separate confessions to the crimes. The judge found defendant had "failed to set forth any new evidence, circumstances, or controlling authority," or otherwise demonstrate that the initial ruling was clearly erroneous or contributed to a manifest injustice.

Subsequent to the court's ruling on the post-trial motions, we affirmed its decisions to admit defendant's statements and to sever the counts of the indictment for two trials. Torres,

<u>supra</u>, slip op. at 6-7, 14-16. Accordingly, defendant's arguments regarding the involuntariness of his March 11 statement as having been the product of an impermissible "question-first, warn-later" interrogation,[1] and the failure to try the 2006 and 2009 robberies separately, are barred both by collateral estoppel and the law of the case doctrine because another panel of this court rejected them on the merits in defendant's prior appeal. <u>See</u> <u>State v. K.P.S.</u>, 221 <u>N.J.</u> 266, 276-78 (2015) (distinguishing between collateral estoppel and law of the case); <u>see also</u> <u>Lombardi v. Masso</u>, 207 <u>N.J.</u> 517, 539-40 (2011) (explaining application of the law of the case doctrine in connection with appellate proceedings); <u>State v. Myers</u>, 239 <u>N.J. Super.</u> 158, 164 (App. Div.), <u>certif. denied</u>, 127 <u>N.J.</u> 323 (1990); <u>State v. Hale</u>, 127 <u>N.J. Super.</u> 407, 410 (App. Div. 1974) ("'Law of the case' most commonly applies to the binding nature of appellate decisions upon a trial court if the matter is remanded for further proceedings, or upon a different

---

[1] As we have available to us the brief defendant filed in support of his appeal from the first trial, we have confirmed he argued at length that <u>State v. O'Neill</u>, 193 <u>N.J.</u> 148 (2007), condemning the two-step "question-first, warn-later" interrogation technique, should have rendered his "formal statements" inadmissible and that "the trial court erred in failing to sever the five bank robbery counts and order separate trials for each" because of the likelihood "the jury would conclude he was guilty of all the crimes than had separate trials been held."

appellate panel which may be asked to reconsider the same issue in a subsequent appeal.").

As to the new issue defendant raised regarding his March 11 statement, that because he had already been assigned counsel on the 2010-2011 robbery charges, he should not have been questioned on the 2006 and 2009 robberies without counsel present, we agree with the trial court that defendant's Sixth Amendment rights were not violated. Although there is no question but that defendant's right to assistance of counsel in connection with the 2010-2011 robberies had already attached at the time of his March 11 statement, Sixth Amendment protection "is 'offense specific' in its attachment." State v. Harris, 181 N.J. 391, 435 (2004) (quoting Texas v. Cobb, 532 U.S. 162, 164, 121 S. Ct. 1335, 1338, 149 L. Ed. 2d 321, 326 (2001)), cert. denied, 545 U.S. 1145, 125 S. Ct. 2973, 162 L. Ed. 2d 898 (2005).

Defendant's Sixth Amendment right to counsel had not attached to the 2006 and 2009 bank robberies at the time of his March 11 statement simply because he had been charged with other bank robberies committed in 2010 and 2011. The interrogation makes clear the detectives questioning defendant were not even aware of the 2009 robbery when defendant confessed to it. Because the 2006 and 2009 robberies were committed well before

the offenses with which defendant had been charged, occurred in different towns, involved a different car and apparently a different gun, we agree with the trial judge that they were not so factually related to the charged offenses as to bar defendant's interrogation on the unsolved 2006 and 2009 robberies. See Harris, supra, 181 N.J. at 435-36.

We find no abuse of discretion in the trial court's decision to permit limited references to defendant's drug use to remain in his March 11 statement played for the jury. See State v. Rose, 206 N.J. 141, 157 (2011). Although the trial judge at one point referred to those unredacted references as evidence of motive, which would make them inadmissible, see State v. J.M., Jr., 438 N.J. Super. 215, 223 (App. Div. 2014), aff'd as modified, 225 N.J. 146, 151 (2016), he quickly corrected the error. The judge subsequently made plain in ruling on defendant's application to strike the references, that he would not redact those statements in which defendant explained how he tricked his girlfriend into driving the getaway car by telling her he was meeting his drug dealer because they related to "what occurred that day."

The unredacted statements explain defendant's scheme to keep his girlfriend in the dark in order to get to and from the robberies, which facilitated his commission of the crime.

Indeed, defendant told his interrogators he chose the banks to boost the credibility of his story, as they were on the route he traveled to buy drugs. Thus we conclude the references were properly admitted as intrinsic evidence of the crimes and were not unduly prejudicial to him. See Rose, supra, 206 N.J. at 177-78, 180-82 (explaining that "uncharged acts performed contemporaneously with the charged crime may be termed intrinsic if they facilitate the commission of the charged crime" (quoting United States v. Green, 617 F.3d 233, 249 (3d Cir. 2010))).

As we have already explained why the trial court did not err in refusing to revisit its prior rulings on the admissibility of defendant's confessions and severance, the only two grounds raised in the motion for new trial, it requires no further discussion. We turn to defendant's motion for acquittal, based on the State's failure to adequately corroborate his confession.

To avoid the danger of convicting a defendant solely on the basis of his or her own words, the State must introduce independent proof of facts and circumstances that strengthen or bolster a confession and tend to generate a belief in its trustworthiness, plus independent proof of loss or injury. State v. Reddish, 181 N.J. 553, 617-18 (2004). The Supreme Court has instructed, however, that trial courts should deny a

motion for acquittal on such grounds if the State introduces "any legal evidence, apart from the confession of facts and circumstances, from which the jury might draw an inference that the confession is trustworthy." Id. at 617 (quoting State v. Lucas, 30 N.J. 37, 62 (1959)).

Applying that standard here, we are satisfied defendant's motion for acquittal was properly denied. The testimony of the tellers established the facts of the robberies and proof of loss. The State produced additional evidence of the 2006 robbery in the form of the borrowed red car, driven by a woman matching the description of defendant's girlfriend, the witness who saw a man exit the red car and run from the bank minutes later, as well as the plastic bag and pellet gun recovered from the scene. The corroborating evidence of the 2009 robbery was less extensive, but the State established that a bank located in the exact location defendant described was robbed "about a year and a half" before defendant's March 11, 2011 confession by a man of defendant's build who carried a gun and a plastic grocery bag and demanded large bills. Nothing more was required. Missing details, speculation or discrepancies in the evidence were fact questions going to its weight and sufficiency, which were properly resolved by the jury. See State v. DiFrisco, 118

N.J. 253, 271-72 (1990), cert. denied, 516 U.S. 1129, 116 S. Ct. 949, 133 L. Ed. 2d 873 (1996).

Defendant's argument as to the chilling effect of the court's ruling on the use of the video portion of his March 11 statement requires only brief comment. A defendant's right to testify in his own behalf is protected by the constitution. Rock v. Arkansas, 483 U.S. 44, 51, 107 S. Ct. 2704, 2708, 97 L. Ed. 2d 37, 46 (1987). But the decision is a strategic one, to be made with advice of counsel. State v. Cordero, 438 N.J. Super. 472, 488 (App. Div. 2014), certif. denied, 221 N.J. 287 (2015). "[A] defendant who elects to testify . . . is subject to the same credibility attacks as any other witness" because "defendants who testify are obligated to tell the truth like all other witnesses." State v. Daniels, 182 N.J. 80, 97 (2004). "Indeed, the right to testify is neither a license to commit perjury nor a shield against contradiction." Ibid. To that end, statements and physical evidence which have been suppressed may be utilized to impeach false statements made by a defendant. See, e.g., United States v. Havens, 446 U.S. 620, 626-27, 100 S. Ct. 1912, 1916, 64 L. Ed. 2d 559, 565-66 (1980); Harris v. New York, 401 U.S. 222, 224-26, 91 S. Ct. 643, 645-46, 28 L. Ed. 2d 1, 4-5 (1971).

Having presided over defendant's first trial, in which he took the stand, the judge was in a unique position to address the use of the video portion of the March 11 statement to impeach defendant's credibility. We accordingly view his advice to defendant about the potential use of the video portion of the statement to impeach his credibility as no more than fair warning. The ruling both protected defendant from the jury viewing him in prison garb, and cautioned him as to the limits of that ruling. It thus struck a fair balance between competing interests and did not impinge on defendant's right to testify if he so chose.

We turn now to defendant's sentence, which we find more problematic than the issues he raises as to his conviction.

As previously noted, we affirmed the extended-term sentence of forty years defendant is currently serving following his conviction of three of the five robberies charged in the single superseding indictment. See infra at 2. Following defendant's conviction of the remaining two robberies, the trial judge sentenced him, after merger, to the top of the range on both the first- and second-degree convictions and ran them consecutively to each other and to the forty-year sentence defendant is currently serving. The judge, however, offered no explanation for the consecutive sentences other than to note "that the

robberies of which this defendant was convicted both in the first trial and the second trial apply all the Yarbough[2] standards. These are clearly separate offenses and he will be sentenced accordingly."

It is axiomatic that our review of a trial judge's sentencing determination is deferential. See State v. Fuentes, 217 N.J. 57, 70 (2014). Thus a sentencing court's decision to impose consecutive sentences will not be disturbed on appeal, so long as the judge has properly evaluated the Yarbough factors in light of the record. State v. Cassady, 198 N.J. 165, 182 (2009).

But evaluation of those factors is critical. Here, defendant was forty-six years old at the time of sentencing and was already serving a forty-year NERA term on other counts of the same indictment. Following a six-day trial in which defendant was convicted of a lesser-included offense with regard to the 2009 robbery and acquitted of an attendant weapons charge, the judge imposed a thirty-year consecutive sentence without articulating his consideration of either the Yarbough factors or the real-time consequences of the NERA terms. See

---

[2] State v. Yarbough, 100 N.J. 627, 643-44 (1985), cert. denied, 475 U.S. 1014, 106 S. Ct. 1193, 89 L. Ed. 2d 308 (1986).

State v. Hernandez, 208 N.J. 24, 50 (2011). We would ordinarily in this circumstance, remand for the judge to articulate his reasons for the sentence with specific reference to the Yarbough factors. See State v. Abdullah, 184 N.J. 497, 514-15 (2005). The trial judge's retirement, however, makes that course impossible. Accordingly, we vacate the sentence and remand for a new sentencing hearing.

Defendant's convictions are affirmed and the matter remanded for a new sentencing hearing. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5901-13T4