**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1589-24

STATE OF NEW JERSEY,

      Plaintiff-Appellant/
      Cross-Respondent,

v.

OTWAY K. GARLAND,

      Defendant-Respondent/
      Cross-Appellant.

_____

Argued November 12, 2025 – Decided December 10, 2025

Before Judges Gilson and Vinci.

On appeal from an interlocutory order of the Superior Court of New Jersey, Law Division, Essex County, Indictment No. 24-11-2439.

Frank J. Ducoat, Deputy Chief Assistant Prosecutor, argued the cause for appellant/cross-respondent (Theodore N. Stephens II, Essex County Prosecutor, attorney; Hannah Faye Kurt, Assistant Prosecutor, of counsel and on the briefs).

Stefan Van Jura, Assistant Deputy Public Defender, argued the cause for respondent/cross-appellant

(Jennifer N. Sellitti, Public Defender, attorney; Rochelle Watson, Assistant Deputy Public Defender, of counsel and on the brief).

PER CURIAM

Defendant Otway K. Garland was charged in a single indictment with crimes allegedly committed in connection with the following events: an October 23, 2023 burglary in Newark; October 25, 2023 burglaries in Irvington; and an October 27, 2023 robbery and subsequent eluding in Irvington. Defendant moved to sever the charges, seeking three separate trials. On December 19, 2024, the court entered an order granting the motion in part severing the October 27 charges from the October 23 and 25 charges, which would be tried together.

By leave granted, the State appeals from the December 19 order contending all the charges should be tried together in a single trial. Defendant cross appeals contending the three sets of charges should be tried separately. Having considered the record and applicable law, we affirm as modified in this opinion.

I.

The State alleges that on October 23, 2023, defendant burglarized a business on Ferry Street in Newark, taking two Samsung tablets and approximately $300 in cash. Black and white surveillance video from inside the

business showed a male suspect wearing a light-colored hooded sweatshirt, light-colored pants, and light-colored sneakers. The suspect's face was partially covered, but he had two visible tattoos on his face and tattoos on the backs of his hands. The suspect was wearing a chain around his neck. Law enforcement subsequently identified the suspect as defendant by comparing his recent photograph in an unrelated matter to the surveillance video.

The State alleges that on October 25, 2023, defendant burglarized the Valley Mall Plaza on Chancellor Avenue in Irvington and a business located inside the mall. Law enforcement obtained surveillance video from inside the mall and the surrounding area. Color surveillance video from the afternoon of October 24, showed two individuals, one of whom was later identified as defendant, driving into the mall parking lot in a blue 2020 GMC Terrain with New Jersey registration G7*RU* (the GMC Terrain). Law enforcement later determined the vehicle had been stolen in Jersey City earlier that day.

Defendant exited the driver's side of the vehicle and entered the mall. He was wearing a beige hooded sweatshirt, blue jeans, and white and blue "Air Jordan 12 Retro" sneakers. On color surveillance video from inside the mall, defendant was seen "casing the security desk area" and he "removed a black

A-1589-24

handbag from the desk." He then exited the mall, ran back to the GMC Terrain carrying a black bag, and drove out of the parking lot.

At approximately 11:30 p.m., defendant was seen on color surveillance video entering the mall wearing the same clothing he was wearing earlier that day. Defendant was accompanied by an unidentified individual wearing all black clothing, a black face mask, and black gloves.

Shortly thereafter, defendant was seen on black and white surveillance video tampering with the door to a business on the second floor of the mall using a machete. He gained entry and removed $750 from three cash registers. Defendant's hand tattoos were clearly visible as he removed cash from the registers and, at one point, he looked up providing a clear image of his face and facial tattoos. He was wearing a similar chain and light-colored hooded sweatshirt and had what appeared to be the same hand and facial tattoos as the suspect in the October 23 burglary in Newark.

The State alleges that on October 27, 2023, defendant went to a gas station on Springfield Avenue in Irvington driving the GMC Terrain. Defendant approached a gas station employee and asked to use his cell phone as a flashlight to search for something in his vehicle. The gas station employee recognized defendant from previous interactions with him and agreed.

4

Defendant placed the employee's phone in his pocket and got back into the vehicle. The employee asked for his phone and attempted to open the door. Defendant punched him in the arm. The employee saw a black handgun in defendant's right front pocket. Defendant fled in the GMC Terrain. The employee subsequently identified defendant from a photo array.

A police officer canvassing the area in a police vehicle shortly after the robbery saw the GMC Terrain and attempted to conduct a motor vehicle stop. The GMC Terrain fled at a high rate of speed with the officer in pursuit. The high-speed chase ended in Newark when defendant's vehicle collided with multiple police vehicles. Defendant and two police officers were injured in the collision. Defendant was arrested at the scene. When apprehended, defendant was wearing multiple chains, one of which appeared to be the chain he was wearing during the October 23 and October 25 burglaries. The phone taken during the earlier gas station robbery was in the vehicle. Black clothing matching the clothing worn by the unidentified individual with defendant on October 25 was also located in the vehicle.

Defendant was initially charged in three separate indictments. On November 22, 2024, an Essex County grand jury returned a twenty-count superseding indictment charging defendant as follows: (1) counts one through

5

five relate to the October 23 burglary and charge third-degree conspiracy to commit burglary, N.J.S.A. 2C:5-2 and N.J.S.A. 2C:18-2; third-degree burglary, N.J.S.A. 2C:18-2; third-degree theft, N.J.S.A. 2C:20-3(a); fourth-degree possession of burglary tools, N.J.S.A. 2C:5-5(a)(1); and fourth-degree criminal mischief, N.J.S.A. 2C:17-3(a)(1); (2) counts six through nine relate to the October 25 burglaries and charge two counts of third-degree burglary, N.J.S.A. 2C:18-2; fourth-degree possession of a weapon, N.J.S.A. 2C:39-5(d); and third-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(d); (3) counts ten through twenty relate to the robbery and eluding on October 27 and charge first-degree robbery, N.J.S.A. 2C:15-1; second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b); second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a); second-degree eluding, N.J.S.A. 2C:29-2(b); third-degree receiving stolen property, N.J.S.A. 2C:20-7(a); fourth-degree obstruction, N.J.S.A. 2C:29-1; third-degree resisting arrest, N.J.S.A. 2C:29-2(a)(3)(a); fourth-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-5(d); third-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(d); and second-degree aggravated assault, N.J.S.A. 2C:12-(1)(b)(6).

6

On December 11, 2024, following oral argument on defendant's motion to sever, the court granted the motion in part supported by an oral opinion. The court was "satisfied that . . . defendant . . . raised some serious concerns that require severance as to the burglaries from the events of October 27[] which are the robbery of the gas station attendant and the eluding." The court concluded:

> the only common thread is the unlawful taking of property. In the [c]ourt's view, there is a serious risk that this will be presented or perceived, even if that is not the overt presentation . . . of the prosecution, that this is a crime spree perpetrated by one person and an unknown individual or individuals.
>
> [T]his creates a risk that the prejudice will outweigh the probative value of the linkage of these events. And . . . there is a risk that . . . defendant would be simply seen as a bad guy by the jury. And that is inappropriate under both the court rules and the case law.

The court was "satisfied that the two burglaries [on October 23 and 25 could] be linked on one indictment. They [were] basically a day apart. They involve forced entry into a commercial premises . . . [and] the taking of property from that premises." The court found "under [N.J.R.E.] 404[(b),] that elements of what is sometimes known as the mimic rule are met here. In particular[] intent, absence of mistake[,] and common scheme o[r] plan" and the October 23 and 25 charges "should be tried together."

A-1589-24

On December 19, the court entered a conforming order.[1]  On January 31, 2025, we granted the State's motion for leave to appeal.

II.

On appeal, the State raises the following point for our consideration.

> THE TRIAL COURT ABUSED ITS DISCRETION IN GRANTING SEVERANCE.

On cross-appeal, defendant raises the following point for consideration.

> THE TRIAL COURT'S DENIAL OF SEVERANCE OF THE OCTOBER 23 AND 25 BURGLARIES CONSITUTED ERROR BECAUSE THE SECOND BURGLARY OFFERS NO PROBABTIVE VALUE IN IDENTIFYING THE PERPETRATOR FROM THE OBSCURED SURVEILLANCE FOOTAGE OF THE FIRST BURGLARY.

We are satisfied the court correctly denied defendant's motion to sever the October 23 and 25 charges and ordered that those charges be tried together.  We do not find any basis to conclude the court misapplied its discretion by severing the October 27 charges for a separate trial.  Nevertheless, we conclude the State should be permitted to introduce a "sanitized" version of the events of October

---

[1]  The order incorrectly refers to severance of counts eleven through nineteen instead of counts ten through twenty.  It is clear the court intended to sever counts ten through twenty from counts one through nine.

8

27, to establish defendant's identity in connection with the October 23 and 25 burglaries.

"The decision whether to grant severance rests within the trial court's sound discretion and is entitled to great deference on appeal." State v. Brown, 118 N.J. 595, 603 (1990) (citing State v. Laws, 50 N.J. 159, 175 (1967)). We defer to the trial court's decision on a severance motion unless it constitutes an abuse of discretion. State v. Weaver, 219 N.J. 131, 149 (2014) (citing State v. Sanchez, 143 N.J. 273, 283 (1996)).

Rule 3:7-6 permits the State to charge multiple offenses in a single indictment "if the offenses charged are of the same or similar character or are based on the same act or transaction or on [two] or more acts or transactions connected together." "Although joinder is favored, economy and efficiency interests do not override a defendant's right to a fair trial." State v. Sterling, 215 N.J. 65, 72 (2013).

Rule 3:15-2(b) provides:

> [i]f for any . . . reason it appears that a defendant . . . is prejudiced by a permissible or mandatory joinder of offenses . . . in an indictment . . . the court may order . . . separate trials of counts . . . or direct other appropriate relief.

9

"Charges need not be identical to qualify as 'similar' for purposes of joinder under [Rule] 3:7-6." Sterling, 215 N.J. at 91. Rather, all that is required is "some connection between separate counts rendering the evidence probative of a material issue in another charge." Ibid. "The test is whether the evidence from one offense would have been admissible N.J.R.E. 404(b) evidence in the trial of the other offense[.] . . ." Id. at 98. "If the evidence would be admissible at both trials, then the trial court may consolidate the charges because 'a defendant will not suffer any more prejudice in a joint trial than he would in separate trials.'" State v. Chenique-Puey, 145 N.J. 334, 341 (1996) (quoting State v. Coruzzi, 189 N.J. Super. 273, 299 (App. Div. 1983)).

N.J.R.E. 404(b)(1) to (2) provides, in pertinent part:

> [E]vidence of other crimes, wrongs, or acts is not admissible to prove a person's disposition in order to show that on a particular occasion the person acted in conformity with such disposition.
>
> This evidence may be admitted for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident when such matters are relevant to a material issue in dispute.

To be admissible:

> 1. The evidence of the other crime must be admissible as relevant to a material issue;

10

2. It must be similar in kind and reasonably close in time to the offense charged;

3. The evidence of the other crime must be clear and convincing; and

4. The probative value of the evidence must not be outweighed by its apparent prejudice.

[State v. Cofield, 127 N.J. 328, 338 (1992) (footnote and citation omitted).]

"The first prong requires that 'the evidence of the prior bad act, crime, or wrong . . . be relevant to a material issue that is genuinely disputed.'" State v. Willis, 225 N.J. 85, 98 (2016) (quoting State v. Covell, 157 N.J. 554, 564-65 (1999)). Stated differently, "[t]o avoid prejudicial joinder, the court must conclude . . . 'the evidence of other crimes or bad acts [is] relevant to prove a fact genuinely in dispute and the evidence is necessary as proof of the disputed issue.'" State v. Smith, 471 N.J. Super. 548, 567 (App. Div. 2022) (second alteration in original) (quoting Sterling, 215 N.J. at 73).

"[E]vidence of a later crime may be admitted on the issue of identity when defendant's connection to the first crime was established by specific evidence discovered during the second crime." Sterling, 215 N.J. at 92. For example, we previously upheld the admission of evidence from a prior robbery to prove identity in a murder case because the defendant in both crimes used a distinctive

fake mustache as part of his disguise.  State v. Porambo, 226 N.J. Super. 416, 423-24 (App. Div. 1988).  Similarly, in State v. Sempsey, we upheld admission of evidence from other assaults to prove identity where the assailant in each incident used a distinctive disguise and employed the same unusual method of attack.  141 N.J. Super. 317, 323-24 (App. Div. 1976).

The second and third prongs of the Cofield test are self-explanatory.  The fourth prong of the Cofield test "is generally the most difficult part of the test[,]" and requires careful consideration.  State v. Barden, 195 N.J. 375, 389 (2008).  That prong "requires an inquiry distinct from the familiar balancing required under N.J.R.E. 403: the trial court must determine only whether the probative value of such evidence is outweighed by its potential for undue prejudice, not whether it is substantially outweighed by that potential."  State v. Green, 236 N.J. 71, 83-84 (internal citation and emphasis omitted).  In performing that analysis, a court must consider whether the other-crimes evidence is necessary to prove the fact in dispute or whether other, less prejudicial evidence could be used to prove the same fact.  Barden, 195 N.J. at 389 (citing State v. Jenkins, 178 N.J. 347, 365 (2004)).  "All four of these factors must support the admission of the evidence in question."  State v. J.M., Jr., 438 N.J. Super. 215, 221 (App. Div. 2014) (citing State v. P.S., 202 N.J. 232, 255 (2010)).

We are persuaded prong one of the Cofield test is satisfied here. Evidence of the October 25 burglaries is relevant and material to the identification of defendant as the perpetrator of the October 23 burglary. The surveillance videos of the burglaries show the perpetrator's distinctive tattoos on his face and hands. During the October 23 burglary, however, the perpetrator's face was partially obscured by a facial covering. During the October 25 burglaries, the perpetrator's face was fully exposed, and he looked directly into the camera providing a clear image of his face and facial tattoos. In addition, the perpetrator was wearing a similar light-colored hooded sweatshirt and chains during both burglaries.

Evidence of the October 27 robbery and eluding is also relevant and material to prove defendant's identity as the person who committed the October 23 and 25 burglaries. Defendant was driving the same GMC Terrain on October 27 that he drove to the mall on October 25, and he was arrested at the scene of the October 27 accident in that vehicle. His identity as the driver of the GMC Terrain on October 27 is highly probative evidence to demonstrate defendant's identity as the perpetrator of the October 25 burglaries and, in turn, that he was also the perpetrator of the October 23 burglary. Defendant was also wearing chains when he was arrested on October 27 that were similar to those seen in the

13

surveillance videos of the October 23 and 25 burglaries. In addition, he was in possession of black clothing that matched the outfit worn by the unidentified individual with defendant on October 25.

Prongs two and three of the Cofield test are easily satisfied here. All the crimes were committed within days of each other and are supported by reliable evidence.

We do not find any basis to disturb the court's analysis of prong four of the Cofield test. The October 27 charges include allegations that defendant caused a motor vehicle accident that injured two police officers and that he committed a robbery while in possession of a handgun. We are persuaded the court correctly determined that trying the October 27 charges together with the burglary charges would create a significant likelihood the jury would convict defendant of all the crimes charged "because he was a bad person, and not on the basis of the actual evidence adduced against him." State v. Rose, 206 N.J. 141, 164 (2011). The court properly exercised its discretion to sever counts one through nine from counts ten through twenty and try counts one through nine in a single trial.

We are convinced, however, during the trial on counts one through nine, the State should be permitted to introduce evidence that: (1) on October 27

defendant was driving the same GMC Terrain he was seen driving into the mall parking lot on October 25; (2) defendant was wearing chains similar to those seen in the surveillance videos of the burglaries when he was arrested on October 27; and (3) the black clothing was located in the vehicle when defendant was arrested.

As discussed previously, that evidence is relevant and material to identity and satisfies prongs one, two, and three of the <u>Cofield</u> test. We are convinced prong four of the <u>Cofield</u> test is also satisfied if the evidence is introduced without reference to the charges contained in counts ten through twenty of the indictment, and subject to an appropriate N.J.R.E. 404(b) limiting instruction regarding the permitted use of the evidence. Allowing the State to introduce a sanitized version of the evidence from October 27 will balance the State's right to present relevant and highly probative evidence of identity against defendant's right to a fair trial.

Affirmed as modified. Remanded for proceedings in conformity with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Hanley

Clerk of the Appellate Division

15

A-1589-24